**UNITED STATES of America,**

v.

**Alfonso F. CARTER, a/k/a Vernon Matthews Alfonso F. Carter, Appellant.**

**No. 00–4217.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 7, 2002.

Decided Dec. 5, 2002.

Before McKEE and GREENBERG, Circuit Judges, and LIFLAND, Judge.*

OPINION

McKEE, Circuit Judge.

Alfonso F. Carter appeals from the district court's imposition of a sentence of

incarceration of 284 months, arguing that the district court erred by using the Offense Statutory Maximum of life imprisonment in calculating his offense level under the Career Offender Guideline. U.S.S.G. § 4B1.1. He claims that this alleged error resulted in a significantly greater term of imprisonment than was warranted. We disagree and will affirm.

I.

On April 21, 1999, a grand jury returned an indictment charging Carter with two counts of distribution and possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1). Pursuant to a written plea agreement, Carter appeared at a plea hearing on July 13, 1999, to enter a guilty plea to Count I of the indictment. However, during the proceeding Carter apparently changed his mind and decided not to go forward with the plea.

On August 10, 1999, a new plea agreement was filed, in which Carter agreed to plead guilty to Count II of the indictment. Paragraph 12 of the plea agreement provided:

> With respect to the application of the United States Sentencing Commission Guidelines to the defendant's conduct, the parties are in disagreement about the amount of drugs to be attributed to the defendant as relevant conduct. The defendant understands that this issue will be decided by the Court following a hearing at which the government must prove by a preponderance of the evidence the amount of the drugs it believes should be attributed to the defendant.

---

* Honorable John C. Lifland, Senior Judge, United States District Court for the District of New Jersey, sitting by designation.

App. at 62. Carter thereafter appeared before the district court, and his guilty plea to Count II of the indictment was accepted. During the guilty plea proceeding, the Assistant United States Attorney ("AUSA") stated that the maximum penalty for the offense Carter was pleading guilty to was life in prison. The district court asked Carter if he understood the maximum penalties and Carter responded affirmatively. The AUSA also stated the factual basis for the charge and the plea, which included the fact that the amount of crack cocaine found in the car Carter was driving was 54.8 grams. Carter said that he had no disagreement with anything the AUSA stated. The district court accepted Carter's guilty plea and ordered that a Presentence Report ("PSR") be prepared.

On September 13, 1999, Carter filed a *pro se* motion to withdraw his guilty plea. However, the district court denied that motion and appointed new counsel for Carter by Order dated October 15, 1999.

The Offense Conduct portion of the PSR that was prepared was based on "information obtained from the [AUSA] and investigative reports." PSR, ¶ 3. That information included the offer of proof submitted as the factual basis for Carter's guilty plea as well as police and lab reports. The PSR also contained findings with respect to Count II as well as the count that was to be dismissed pursuant to the plea agreement (Count I).

The PSR recited that Carter had been driving a Chevrolet Blazer, made an illegal turn and crashed into an oncoming vehicle. PSR, ¶ 8. Carter then backed-up and continued driving. *Id.* However, a police officer saw the accident and pursued Carter's car until Carter stopped, and fled on foot. He then was apprehended by the police. *Id.* Carter had $4,815 in cash on his person, and a search of the car revealed 54.8 grams of crack cocaine and 8.1 grams of

marijuana. *Id.* That conduct all related to the count of conviction.

As to the count to be dismissed, the PSR recited that Carter was involved in an earlier traffic stop because he failed to yield at an intersection, and had falsely identified himself to the police. A consensual search at that time revealed a gym bag on the back seat containing 253.8 grams of crack cocaine and $15,000 in cash. *Id.*

In an interview with a Probation Officer, Carter admitted possessing the crack cocaine involved in the incident charged in the count of conviction. PSR, ¶ 13. Carter also admitted that he ran from the car because he knew drugs "he planned to sell" were inside. PSR, ¶ 13. Based on this information and the reports of both incidents, the Probation Officer recommended that Carter be held responsible for between 150 to 500 grams of crack cocaine. PSR, § 18. The Probation Officer also noted Carter's status as a career offender based upon the current controlled substance offense and prior convictions for either crimes of violence or controlled substance offenses. PSR, § 26; *see also* U.S.S.G. § 4B1.1. Because the count of conviction by itself involved mor than 50 grams of crack cocaine, the Probation Officer concluded that the applicable statutory maximum was life imprisonment, *see* 21 U.S.C. § 841(b)(1)(A), making Carter's base offense level a 37. PSR, ¶ 26. After deducting three levels for acceptance of responsibility, the PSR calculated his total offense level as 34. *Id.* With a criminal history category of VI, pursuant to the career offender guideline, the PSR calculated Carter's guidelines sentencing range as 262 to 327 months.

The final PSR was dated November 24, 1999, and Carter did not object to it. During the ensuing sentencing hearing, Carter's counsel told the district court that he

had reviewed the PSR and "as to the criminal history and everything else, that's correct . . . ." App. at 83. Carter's counsel added only that the district court consider that Carter had been active in the community by coaching and being involved in the Cub Scouts and the Junior League. Counsel requested that the district court impose its sentence to run concurrently with the remainder of a state sentence Carter was then serving. The district court adopted the factual findings and guideline application of the PSR and sentenced Carter to 284 months imprisonment, to run concurrently with his state sentence.

This appeal followed.

## II.

■ As we noted at the outset, Carter argues that the district court erred by using the statutory maximum of life in calculating his offense level for purposes of the Career Offender Guideline, thereby subjecting him to a significantly higher term of imprisonment than was warranted.

The Career Offender Guideline defines the offense level based upon the Offense Statutory Maximum. U.S.S.G. § 4B1.1. The Application Note explains that the Offense Statutory Maximum

> refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained,

for example, in 21 U.S.C. § 841(b)(1)(A), (B), (C) and (D) . . . .

U.S.S.G. § 4B1.1, Application Note 2.

Here, the PSR concluded that Carter's count of conviction involved 54.8 grams of crack cocaine. PSR, ¶ 8. Because that count involved more than 50 grams of crack cocaine, the PSR stated that the Offense Statutory Maximum was life, *see* 21 U.S.C. § 841(b)(1)(A). PSR, ¶ 26. Therefore, in accordance with the Career Offender Guideline, the PSR assigned Carter a base offense level of 37. PSR, ¶ 26 (citing U.S.S.G. § 4B1.1(A)).

Carter contends that the district court's use of the Offense Statutory Maximum of life was incorrect because the government failed to charge and prove the drug quantity he pled guilty to. Consequently, he claims that the Offense Statutory Maximum should have been controlled by the "catch-all" provision in 21 U.S.C. 841(b)(1)(C).[1] Based on his prior drug conviction, § 841(b)(1)(C) provides for an Offense Statutory Maximum of 30 years, resulting in a base offense level of 34. *See* U.S.S.G. § 4B1.1(B). The rationale for his argument is as follows:

He was indicted for distribution and possession with intent to distribute cocaine and cocaine base in violation of § 841(a)(1), a statutory provision that does not refer to drug quantity. The count of the indictment to which he pled guilty did not include any reference to a drug quantity and he pled guilty pursuant to a plea agreement that explicitly stated that he disputed the amount of drugs attributed to him. During his change of plea hearing, the AUSA conceded that Carter disputed the drug quantity and that the court would have to resolve the dispute following a hearing. However, that hearing never oc-

---

**1.** We have held that in drug cases involving § 841, where there is no finding made as to drug quantity, the statutory maximum is de-fined by § 841(b)(1)(C). *See, e.g., United States v. Barbosa,* 271 F.3d 438, 455 (3d Cir. 2001).

curred and the district court never made any finding as to the drug quantity. Finally, he notes the judgment of the district court expressly provides that he pleaded guilty to Count II in violation of § 841(a)(1).

It is beyond dispute that the government bears the burden of proving drug quantity by a preponderance of the evidence at sentencing. *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir.1993). "To carry its burden, the government must present reliable and specific evidence" and the court must "carefully scrutinize the government's proof." *Id.* However, Carter did not object to the drug quantity attributed to him in the PSR. In fact, he did not object to anything contained in the PSR. Accordingly, "where a defendant has failed to object to a purported error before the sentencing court, our review on appeal is only to ensure that plain error was not committed." *United States v. Knight*, 266 F.3d 203, 206 (3d Cir.2001) (citing Fed. R.Crim.P. 52(b)).

> Under this standard we must find that (1) an error was committed, (2) the error was plain, *i.e.*, clear or obvious, and (3) the error affected the defendant's substantial rights. In addition, even where plain error exists, our discretionary authority to order correction is to be guided by whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 206 (citation omitted).

There is no plain error here. At sentencing, the district court had a detailed PSR that included a finding that the offense of conviction involved possession of 54.8 grams of crack cocaine. There was no objection. Although he initially disputed the drug quantity attributed to him, his failure to object to the PSR amounts to an abandonment of that effort. Because Carter failed to object to the drug quantity in the PSR, the district court adopted the factual findings of the PSR. Therefore, contrary to Carter's assertion, the district court did make a finding about the drug quantity.[2]

The statutory maximum of life imprisonment applies once there is a finding that the offense of conviction involved more than 50 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A). Therefore, the use of the Offense Statutory Maximum of life in determining Carter's offense level for purposes of the Career Offender Guideline was proper.

■ Carter also argues that Paragraph 12 of the plea agreement constituted a promise by the government to hold a hearing to determine the drug quantity, and he claims the government breached that promise. He argues that the government's breach of promise "impacts the fairness, integrity and public reputation of judicial proceedings" making his case an appropriate one for this court to exercise its discretion and remand for resentencing. Carter's Br. at 24. We do not believe that Paragraph 12 constitutes a governmental promise to hold a drug quantity hearing. Paragraph 12 only noted that since Carter was disputing the drug quantity attributable to him, the government recognized its obligation to prove the drug quantity at a hearing. However, because Carter did not object to the drug quantity in the PSR at sentencing, the court was not required to conduct a hearing to "resolve" a matter that was not then disputed.

In any event, we fail to understand how a hearing would have produced a result more favorable to Carter. Initially, we

---

2. Carter does not argue that in the absence of an objection, it is improper for the district court to adopt the factual findings contained in a PSR.

note that the relevant conduct, i.e., the count dismissed pursuant to the plea agreement, showed a far larger drug quantity of 253.8 grams of crack cocaine. Thus, the Offense Statutory Maximum of life would apply in any event. Furthermore, evidence dictating the drug quantity determination was presented by the AUSA at Carter's plea hearing and Carter affirmatively stated that he had no disagreement with anything the AUSA said. Consequently, a drug quantity hearing was not necessary and such a hearing—if held—could not have resulted in a finding that the Offense Statutory Maximum of life did not apply.

### III.

For all of the above reasons, we will affirm the district court.